UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.C., a minor, by her parents, A.C. and M.C., as her next friends, and A.C. and MC., <br><br> Plaintiffs, <br><br> v. <br><br> ROCKLIN UNIFIED SCHOOL DISTRICT, <br><br> Defendant. | No. 2:17-cv-02645-MCE-AC <br><br> **MEMORANDUM AND ORDER** |

Plaintiffs C.C. ("Student") and her parents A.C. and M.C. ("Parents" and collectively with Student, "Plaintiffs") bring claims for discrimination and retaliation against Defendant Rocklin Unified School District ("Defendant" or "Rocklin") under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504") and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"). They filed their initial Complaint on December 18, 2017. On May 3, 2018, Defendant filed a Motion to Dismiss and/or Motion for a More Definite Statement as to all causes of action (ECF No. 7), to which Plaintiffs responded with a statement of non-opposition (ECF No. 10) and thereafter filed the operative First Amended Complaint ("FAC"). ECF No. 11. Presently before the Court is Defendant's Motion to Dismiss the FAC for Failure to State

1

a Claim (ECF No. 13), which Plaintiffs timely opposed.  ECF No. 17.  For the reasons that follow, Defendant's motion is GRANTED with leave to amend.

## BACKGROUND[1]

Student, a minor with multiple disabilities, resided with her parents within the boundaries of the Eureka Union School District ("Eureka") and began the 2012-2013 academic year in a general education third grade classroom.  Three weeks into the school year, Defendant informed Parents of an opening in a self-contained gifted and talented education ("GATE") classroom in Rocklin for which Student had previously been waitlisted.  Pursuant to an interdistrict transfer agreement between Defendant and Eureka, Student transitioned into Defendant's GATE program.  Defendant was aware that Student had previously received special education and related services as a disabled child in Eureka, and that Student had a history of behavioral problems related to her disabilities.  After four days in the Defendant's GATE program, Parents were informed that Student would be removed from the program and returned to Eureka due to Student's social challenges and difficulty integrating into the classroom.

In response, Parents provided Defendant with information from Student's treating therapist indicating that the GATE program was the appropriate learning environment for Student, and notified Defendant that Student's disability affected her ability to behave appropriately in social settings.  However, despite this notice, Plaintiffs allege that Defendant failed to offer any reasonable accommodations to allow Student to remain in the GATE program and proceeded with her removal.  Student returned to Eureka, where she continued to display problem behaviors related to her disabilities.

Parents subsequently applied for and were granted another interdistrict transfer which allowed Student, now entering fourth grade, to attend Defendant's GATE program during the 2013-2014 academic year.  Despite Defendant's knowledge of Student's

---

[1] The allegations in this section are derived from Plaintiffs' assertions in the FAC.

2

behavioral difficulties, Defendant did not assess Student's needs arising from her disability. Student again demonstrated numerous behavioral challenges, to include difficulty focusing, emotional outbursts, physical aggression toward other students, disruption of classroom activities, and difficulties on the playground. In April 2014, Defendant once again revoked Student's interdistrict transfer permit due to her continued emotional and behavioral issues.

In October 2014, Parents, Defendant, and Eureka entered into an agreement (the "Agreement"), which called for Defendant to complete an assessment of Student to determine her eligibility for special education and related services, and for those results to be reviewed at an individual education program ("IEP") team meeting hosted by Eureka. The Agreement also called for the IEP team to consider a full range of placement options for Student, including a self-contained GATE classroom if Student was determined to be eligible for special education and related services. The Agreement also preserved Student's remedies against Defendant under § 504 of the Rehabilitation Act for its earlier removal of Student from its program if the team determined that the self-contained GATE classroom in Rocklin was an appropriate placement for Student and Defendant refused to provide access to the program.[2]

Thereafter, Defendant and Eureka convened a three-part IEP team meeting that ended in December 2014. Eureka offered Student a placement in a general education GATE "cluster" class within Eureka's District.[3] This offer was largely based on the written input of Student's fourth grade teacher in the Rocklin GATE classroom, which was presented by Defendant's director of special education at the time. Parents requested direct input from Student's previous teacher regarding how she might perform in such an environment if she were provided appropriate special education support and

---

[2] The Agreement was silent as to the preservation of remedies in the case that the IEP team did not agree on a proposed placement.

[3] Unlike the self-contained GATE classroom in Rocklin, the placement offered in Eureka was not geared specifically to its gifted members, but rather "clustered" GATE-qualified students together in a general education classroom.

3

accommodations, but Defendant denied Parents' request.  Eureka also based its offer on the opinion of Defendant's psychologist, who performed Student's assessment.  The psychologist found that the academic demands of the self-contained GATE classroom might be too difficult for Student, and may cause her increased anxiety.  Parents and other independent professionals who worked with Student disagreed, arguing that higher academic standards were what Student required to meet her needs.  Eureka refused to offer the self-contained GATE classroom, stating it did not have the power to offer a program in another district.  Thereafter, Parents enrolled Student at Bridges Academy, a college prep school (grades 4-12) serving gifted students with learning disabilities, located in Studio City, California, and sought reimbursement from Eureka.

In response, Eureka instituted a special education due process hearing against Student to defend its offer of placement.  The dispute between Eureka and Plaintiffs resulted in a settlement in which Eureka provides reimbursement for some of the costs of Student's placement at Bridges Academy.  Defendant was not a party to this action or settlement.  Parents thereafter applied for another interdistrict transfer permit from Eureka to Defendant for the 2015-2016 academic year, but were denied by Defendant.  Plaintiffs believe this denial was discriminatory, as well as retaliatory, because students from other districts enrolled in Defendant's GATE program via the interdistrict transfer procedure and were generally granted permits to continue in the program.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the

amendment. . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A. Plaintiffs' § 504 Claims Are Dismissed With Leave To Amend As Time-Barred

Defendant moves to dismiss Plaintiffs' § 504 claims on the basis that Plaintiffs' claims are entirely time-barred by the applicable statute of limitations.  "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."  Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993) (citing Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)).  As alleged, the Court finds that Plaintiffs' § 504 claims are time-barred, and that Plaintiffs set forth insufficient facts in the FAC to show that they are entitled to equitable tolling.

#### 1. Plaintiffs' § 504 claims are barred by a two-year statute of limitations.

Section 504 does not have its own statute of limitations.  Alexopulos v. S.F.

Unified Sch. Dist., 817 F.2d 551, 554 (9th Cir. 1987).  Thus, the forum state's most analogous statute of limitations applies.  Dep't of Educ. v. Carl D., 695 F.2d 1154, 1157 (9th Cir. 1983).  Courts in this District and the Ninth Circuit apply the forum state's personal injury statute of limitations to § 504 claims.  Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1135 (9th Cir. 2001); Hartline v. Nat'l Univ., Case No. 2:14-cv-0635-KJM-AC (PS), 2015 WL 4716491, at *4-5 (E.D. Cal. Aug. 7, 2015); A.T. by & through L.T. v. Dry Creek Joint Elementary Sch. Dist., Case No. 2:16-cv-02925-MCE-DB, 2017 WL 2654854, at *3-4 (E.D. Cal. June 20, 2017).  In California, the personal injury statute of limitations is two years.  Cal. Civ. Proc. Code § 335.1.

Plaintiffs contend, however, that this Court should apply the three-year statute of limitations applicable to ADA claims instead.  Pls.' Opp'n To Mot. Dismiss, ECF No. 17, at 4.  To support this contention, Plaintiffs rely on Sharkey v. O'Neal, 778 F.3d 767 (9th Cir. 2015), where the Ninth Circuit held that a three-year statute of limitations applies to Title II ADA causes of action.  Id. at 771.  Sharkey is inapposite, however, because it does not address § 504.  Moreover, although the Ninth Circuit has not considered the instant question directly, it has approved of the use of state personal injury statutes of limitation in dicta.  See, e.g., Daviton, 241 F.3d at 1135; Douglas v. Cal. Dept. of Youth Authority, 271 F.3d 812, 823 n.11 (2001) (applying California's personal injury statute of limitations to § 504 claim); Ervine v. Desert View Regional Medical Center Holdings, LLC, 753 F.3d 862, 869 (9th Cir. 2014) (applying Nevada's two-year personal injury statute of limitations to § 504 claims).  District courts in California have likewise uniformly applied a two-year limitations period.  Hartline, 2015 WL 4716491, at *5; Brown v. Napa Valley Sch. Dist., 2012 WL 1831539, at *5 (N.D. Cal. May 18, 2012); J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist., 570 F. Supp. 2d 1212, 1222 (E.D. Cal. July 9, 2008).  This Court agrees that the two-year statute of limitations applies to § 504 claims.  Since the events at issue in this case occurred between April 2014 and December 2014, Plaintiffs' § 504 claims, which were initially filed on December 18, 2017, are time-barred unless Plaintiffs are entitled to equitable tolling.

### 2. Plaintiffs have not established entitlement to equitable tolling.

When a federal court borrows the applicable statute of limitations from state law, it borrows "also the rules for its tolling, unless to do so would be 'inconsistent with the federal policy underlying the cause of action under consideration.'" Alexopulos, 817 F.2d at 555 (quoting Bd. of Regents v. Tomanio, 446 U.S. 478, 485 (1980)). Here, Plaintiffs contend that they are entitled to equitable tolling for the time periods in which their administrative actions were pending. Pls.' Opp'n to Mot. Dismiss, ECF No. 17, at 6. This argument is unpersuasive, however, because Plaintiffs failed to allege the date on which their first administrative action was filed, and their two subsequent administrative actions do not give rise to tolling because Plaintiffs voluntarily dismissed those complaints. Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1127 (9th Cir. 2008) ("California courts have concluded that absent express statutory language, a plaintiff's voluntary dismissal will not entitle him to toll the statute of limitations.").

Accordingly, Defendant's Motion to Dismiss Plaintiffs' § 504 causes of action on statute of limitations grounds is GRANTED with leave to amend.

### B. Plaintiffs' ADA Claims Are Partially Time-Barred

Defendant moves to dismiss Plaintiffs' ADA claims on the basis that those claims are partially time-barred by the applicable statute of limitations. The Court agrees.

The parties concur that the statute of limitations for Title II ADA claims is three years. Sharkey, 778 F.3d at 771-72. However, they disagree on when this three-year limitations period began to run on Plaintiffs' ADA claims. "While state law determines the period of limitations, federal law determines when the cause of action accrues." Alexopulos, 817 F.2d at 555. "Under federal law a cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury that is the basis of the action." Id. As Plaintiffs filed their original Complaint in December 2017, the proper inquiry then is when Plaintiffs knew, or had reason to know, of the injury that is the basis of their ADA claim.

///

Plaintiffs allege that Defendant "discriminated against Student by revoking her interdistrict transfer permit <u>in April 2014</u> and removing her from her educational placement without providing her reasonable accommodations or conducting an assessment of the needs arising from her disability . . . ." Mot. Dismiss, ECF No. 13, at 7:2-4 (emphasis added) (citing FAC ¶¶ 28, 30). Thus, the basis of Plaintiffs' ADA claims is Defendant's revocation of Student's interdistrict transfer permit. By Plaintiffs' own allegations, they had knowledge of this injury in April 2014. Accordingly, the Court finds that the statute of limitations on Plaintiffs' ADA claims began to run when Defendant revoked Student's interdistrict transfer permit in April 2014. Plaintiffs' argument that they were barred from asserting their claims due to a provision in the Agreement is unavailing because the agreement was not reached until October 2014. Moreover, the Agreement was not a tolling agreement, but merely preserved Plaintiffs' remedies in the event certain conditions were met. As Plaintiffs do not allege that these triggering conditions occurred, the Agreement has no bearing on the accrual of the instant claim.

Thus, Defendant's Motion to Dismiss Plaintiffs' ADA claims is GRANTED with leave to amend to the extent they are based on the 2014 revocation of the interdistrict transfer permit.[4]

### C. Plaintiffs' Remaining ADA Discrimination Claims (Count One) Are Dismissed With Leave To Amend[5]

For the reasons that follow, the Court dismisses the remainder of Plaintiffs' Count One claims because Plaintiffs have not adequately alleged that Student's education and special education were the responsibility of Defendant, or that Defendant acted in bad faith, with gross misjudgment and deliberate indifference. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

---

[4] As discussed above regarding Plaintiffs' § 504 claims, Plaintiffs have not alleged any basis for equitable tolling in the FAC, but will be permitted leave to amend these allegations with respect to the instant claim as well.

[5] The merits of the claims that the Court has already dismissed as time-barred will not be discussed herein.

9

activities of a public entity, or be subjected to discrimination by any such entity."
42 U.S.C. § 12132.  In order to state a claim under Title II of the ADA, a plaintiff must allege that: (1) he or she is an individual with a disability under the Act; (2) he or she is "otherwise qualified" to participate in or receive the benefit of the entity's services, programs, or activities, i.e., he or she meets the essential eligibility requirements of the entity, with or without reasonable accommodation; (3) he or she was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of his or her disability; and (4) the entity is a public entity.  Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999).

Here, Plaintiffs allege in Count One that because Defendant acted in bad faith, with gross misjudgment, and deliberate indifference, that it therefore discriminated against Student.  Plaintiffs support their discrimination claims by alleging, in part, that Defendant refused to allow Student's most recent teacher to attend the IEP team meeting that culminated on December 18, 2014, that Defendant failed to make its GATE classroom an available option to Student at the December 2014 IEP meeting, and that it improperly denied Student's request for a interdistrict transfer permit to return to its GATE classroom for the 2015-2016 academic year.  Conversely, Defendant argues Eureka, not Defendant, bears responsibility for Student's general and special education because Eureka is Student's school district of residence.  Mot. Dismiss, ECF No. 13, at 9.  Plaintiffs, in turn, assert that Defendant was the last school district in which Student attended school and it agreed to conduct a comprehensive assessment of Student and participate in the IEP team meetings.  Pls.' Opp'n to Mot. Dismiss, ECF No. 17, at 6-7.  The question of responsibility, however, rests on whether the original revocation of Student's interdistrict transfer permit in April 2014 was improper, such that Student might be able to show she was entitled to remain in Defendant's GATE program.

As discussed above, challenges to the April 2014 interdistrict transfer permit revocation are time-barred.  Accordingly, the Court concludes that Plaintiffs have not

adequately pleaded that Student's general and special education were the responsibility of Defendant. Nor have Plaintiffs sufficiently alleged that Defendant's actions amounted to bad faith, gross misjudgment, or deliberate indifference. Mot. Dismiss, ECF No. 13, at 11. Plaintiffs allege that "[s]imilarly situated children placed into the GATE program at Rocklin via an interdistrict transfer could expect to stay in that program for the duration of their schooling." Pls.' Opp'n to Mot. Dismiss, ECF No. 17, at 8. This argument is unavailing because it rests on the contention that the April 2014 revocation of Student's interdistrict transfer permit was improper. However, because challenges to the April 2014 revocation are time-barred, this revocation cannot be used as the basis of Plaintiffs' discrimination claims here.

Furthermore, even if the April 2014 revocation was not time-barred, Plaintiffs still do not allege facts showing bad faith, gross misjudgment, or deliberate indifference. Intentional discrimination, which requires discriminatory animus or deliberate indifference, is required to recover monetary damages. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. Plaintiffs have not alleged any facts indicating that the conduct of or conclusions reached by Defendant were the result of anything other than differences of opinion. Plaintiffs likewise fail to provide any factual allegations indicating that Student's disability improperly served as the basis for Defendant's denial of her 2015-2016 interdistrict transfer request, or that she was treated any differently from other students submitting a new application for enrollment in Defendant's program. Given the foregoing, Defendant's motion to dismiss Plaintiffs' remaining ADA claims is GRANTED with leave to amend.

///

///

///

///

**CONCLUSION**

For the reasons provided, Defendant's Motion to Dismiss, ECF No. 13, is GRANTED with leave to amend. Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiffs may, but are not required to, file a Second Amended Complaint. If no amended complaint is timely filed, the causes of action dismissed by virtue of this Order will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated: February 20, 2019

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE